[Cite as *State v. Willis*, 2013-Ohio-2391.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2012-08-155 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 6/10/2013 |
| - vs - | : | |
| | : | |
| LEDARYLE J. WILLIS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-01-0075


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

John T. Willard, P.O. Box 35, Hamilton, Ohio 45012, for defendant-appellant


**S. POWELL, J.**

{¶ 1}   Defendant-appellant, Ledaryle J. Willis, appeals his convictions in the Butler County Court of Common Pleas for carrying a concealed weapon, having a weapon while under disability, and obstructing official business.  For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

{¶ 2}   On January 4, 2012, Middletown Police Officer James Wilcox was patrolling the downtown area of Middletown.  Around 12:30 a.m., Officer Wilcox observed appellant riding

a bicycle without a headlight or rear light. Officer Wilcox drove to a road close to appellant, activated a spotlight, and pulled over. When Officer Wilcox's spotlight illuminated appellant, appellant stood up on his bicycle, pedaled faster, and travelled around Officer Wilcox's vehicle. Appellant traveled through two parking lots, over curbs, and behind Officer Wilcox's vehicle several times. Eventually, a second police cruiser blocked appellant from riding out of a parking lot. Officer Wilcox then bumped appellant's bicycle with his police cruiser's front bumper and appellant fell to the ground.

{¶ 3} After appellant fell to the ground, Officer Wilcox placed appellant in handcuffs. As he handcuffed appellant, Officer Wilcox asked him if he had any weapons on him and appellant did not respond. Officer Wilcox searched appellant's front pocket and found a loaded handgun magazine. Officer Wilcox also found a 9 mm handgun concealed inside a blue sock tucked in the back of appellant's waistband.

{¶ 4} On March 7, 2012, the Butler County Grand Jury indicted appellant for carrying a concealed weapon, having a weapon while under disability, and obstructing official business. Thereafter, appellant's counsel filed a motion to suppress the evidence. Subsequently, the trial court held a hearing and overruled the motion. On May 3, 2012, appellant entered a plea of "no contest" to each charged offense. Appellant was sentenced to an aggregate community control term for five years, a 90-day jail sentence with credit for 92 days served, and a fine of $500. Appellant was also ordered to pay the costs of prosecution.

{¶ 5} Appellant now appeals, asserting four assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} IT WAS ERROR FOR THE JUDGMENT ENTRY IN THE INSTANT CASE TO REFLECT THAT THE APPELLANT PLED GUILTY TO THE CHARGES WHEN THE PLEA SIGNED AT THE PLEA HEARING CLEARLY STATES THAT THE APPELLANT PLED NO

CONTEST.

{¶ 8} Appellant argues that his judgment of conviction entry inaccurately reflects the type of plea he made to the charges. After the motion to suppress, appellant pled "no contest" to carrying a concealed weapon, having a weapon while under disability, and obstructing official business. While appellant pled "no contest" to these charges, the judgment entry states that appellant entered a guilty plea. The state concedes that this was in error and suggests that this court should order the trial court to issue a nunc pro tunc judgment of conviction entry correcting the mistake.

{¶ 9} It is well settled that courts possess the authority to correct errors in judgment entries so that the record speaks the truth. *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-164 (1995); Crim.R. 36. Errors subject to correction by the court include a clerical error, mistake, or omission that is mechanical in nature and apparent on the record and do not involve a legal decision or judgment. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 15. Nunc pro tunc entries are used to make the record reflect what the court actually decided and not what the court might or should have decided or what the court intended to decide. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204.

{¶ 10} In this case, the trial court committed a clerical error by stating that appellant pled "guilty" to the charges when the record reflects that he pled "no contest." It is clear that the trial court actually decided that appellant pled "no contest" and the error in the judgment entry is purely clerical. Consequently, the trial court erred in stating that appellant pled "guilty" to the charges and this matter is remanded to the trial court so that the court may issue a nunc pro tunc entry to accurately reflect appellant's plea.

{¶ 11} Appellant's first assignment of error is sustained.

{¶ 12} Assignment of Error No. 2:

{¶ 13} IT WAS ERROR FOR THE TRIAL COURT NOT TO SUPPRESS ANY OR ALL

EVIDENCE SEIZED BY THE STATE AS THE RESULT OF THE UNWARRANTED AND UNREASONABLE SEARCH AND SEIZURE OF THE APPELLANT WITHOUT PROBABLE CAUSE.

{¶ 14} Appellant challenges the trial court's denial of his motion to suppress the evidence on two bases. Appellant argues that Officer Wilcox had no authority to attempt to stop him when he observed appellant riding a bicycle without a proper light because he only committed a minor misdemeanor. Appellant also maintains that Officer Wilcox's actions were unconstitutional because the officer had no basis to arrest and search him.

{¶ 15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Eyer*, 12th Dist. No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Lange*, 12th Dist. No. CA2007-09-232, 2008-Ohio-3595, ¶ 4. After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *State v. Forbes*, 12th Dist. No. CA2007-01-001, 2007-Ohio-6412, ¶ 29.

## Traffic Stop

{¶ 16} We begin by addressing whether Officer Wilcox's attempts to stop appellant for violating a traffic ordinance were constitutional. Initially, we note that appellant has waived the constitutionality of Officer Wilcox's ability to stop appellant for violating a traffic ordinance. While appellant's written motion to suppress argued that Officer Wilcox's stop was not based on reasonable articulable suspicion, during the suppression hearing, appellant conceded that

he was not challenging the stop. The trial court acknowledged this concession, noting, "I think the defense concedes that the officer's ability to stop the individual for having violated this section is recognized constitutionally."

{¶ 17} In *State v. McMullen*, 12th Dist. No. CA2009-09-235, 2010-Ohio-3369, this court found that a defendant waives a suppression argument on appeal when the defendant raised it in his written motion to suppress but then concedes that it is not an issue during the oral suppression hearing. In so holding, this court reasoned that a defendant must clearly state the grounds on which he is challenging the submission of the evidence because, "[t]he prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.* at ¶ 24, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). Consequently, in light of appellant's counsel's deliberate statements and acquiescence to the trial court's recognition of waiver, appellant waived this issue.

{¶ 18} Notwithstanding the wavier, Officer Wilcox was able to stop appellant when appellant violated a traffic ordinance. The Fourth Amendment to the United States Constitution insulates individuals from unreasonable searches and seizures. *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675 (1985). A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996).

{¶ 19} One type of traffic stop that is permissible under the Fourth Amendment is where a police officer stops a vehicle based on probable cause that a traffic violation has occurred. *State v. Moeller*, 12th Dist. No. CA99-07-128, 2000 WL 1577287, *2 (Oct. 23, 2000), citing *Whren* at 810. Probable cause that a traffic violation has occurred arises where the officer witnesses the traffic violation. *Moeller* at *2. Even a de minimus traffic violation

provides probable cause for a traffic stop. *State v. Williams*, 12th Dist. No. CA2009-08-014, 2010-Ohio-1523, ¶ 13. The Ohio Supreme Court has explained that where an officer has probable cause to stop a motorist for any criminal violation, including a minor traffic violation, "the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity." *State v. Williams*, 12th Dist. No. CA2009-08-014, 2010-Ohio-1523, ¶ 11, quoting *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus.

{¶ 20} Section 474.05 of the City of Middletown Traffic Ordinances provides:

(a) Every bicycle when in use at the times specified in Ohio R.C. 4513.03 or a substantially similar municipal ordinance shall be equipped with the following:

(1) A lamp mounted on the front of either the bicycle or the operator * * *.

(2) A red reflector on the rear * * *.

(3) A lamp emitting either flashing or steady red light * * * in addition to the red reflector. If the red lamp performs as a reflector in that it is visible as specified in division (A)(2) of this section, the red lamp may serve as the reflector and a separate reflector is not required.

{¶ 21} R.C. 4513.03(A)(1) requires every vehicle other than a motorized vehicle that operates upon a street or highway display lights during sunset to sunrise.

{¶ 22} We find that Officer Wilcox was able to stop appellant because he had probable cause that appellant committed a traffic violation. Officer Wilcox testified that he observed appellant riding a bicycle that did not have a headlight or a rear light and that this was in violation of Section 474.05 of Middletown Traffic Ordinances. Additionally, any insinuation by appellant that the stop was not justified because riding a bicycle without lights is "only a minor misdemeanor" is meritless since even a de minimus traffic violation provides probable cause

for a traffic stop. Accordingly, Officer Wilcox had a right to stop appellant upon his observation of appellant riding a bicycle without a proper light.

Arrest and Search

{¶ 23} Next, we address the arrest and search of appellant. Appellant argues that Officer Wilcox did not have probable cause to arrest and search him because he only violated a traffic ordinance. The state advances many arguments as to why the arrest and search of appellant was permissible. We will only address the constitutionality of the arrest and search under the law regarding search incident to arrest because this analysis is determinative.

{¶ 24} Generally, warrantless searches are per se unreasonable subject to "a few specifically established and well-delineated exceptions." *State v. Oglesby*, 12th Dist. No. CA2004-12-027, 2005-Ohio-6556, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967). One such exception is a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969). In order for a search to be conducted pursuant to this exception, the arrest must be lawful. *Id.*

{¶ 25} For a warrantless arrest to be lawful, the arresting officer must have probable cause that the individual had committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964). Probable cause is not subjective. *State v. Abrams*, 12th Dist. No. CA2007-03-040, 2008-Ohio-94, ¶ 12. Rather, probable cause is viewed under an objective standard and is present where, under the facts and circumstances within an officer's knowledge, a reasonably prudent person would believe that the arrestee has committed a crime. *Id.* In making this determination, we examine the totality of the facts and circumstances. *State v. Christopher*, 12th Dist. No. CA2009-08-041, 2010-Ohio-1816, ¶ 16, citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1982).

{¶ 26} The surrounding facts and circumstances provided Officer Wilcox with probable

cause to arrest appellant without a warrant for obstructing official business in violation of R.C. 2921.31.[1] After Officer Wilcox observed appellant operating a bicycle without a proper light, he activated his spotlight and shined it on appellant. Appellant then stood up on his bicycle, pedaled faster, and traveled away. Officer Wilcox testified appellant was obviously "attempt[ing] to get away from [him]." Appellant attempted to ride into another parking lot but a second police cruiser blocked the exit. Eventually, Officer Wilcox hit appellant's back bicycle tire and caused appellant to fall to the ground. Consequently, the evidence shows appellant, with purpose to prevent, obstruct, or hamper Officer Wilcox, engaged in actions that hampered Officer Wilcox's performance of his lawful duties

{¶ 27} We note that while appellant was initially charged with resisting arrest but later indicted for obstructing official business, this fact is of no consequence to our determination. On appeal, our inquiry is whether a reasonably prudent person would have believed that appellant committed an offense. This court has noted, "[t]he arresting officer's subjective belief or motivation in the detention of an individual is not material to the legality of the detention; the correct test is whether there was objective justification for the detention or arrest." *Oglesby*, 12th Dist. No. CA2004-12-027, 2005-Ohio-6556, ¶ 20, citing *State v. Robinette*, 80 Ohio St.3d 234, 236 (1997). Therefore, while Officer Wilcox might have believed that appellant committed the offense of resisting arrest, the evidence shows that probable cause existed to arrest appellant for obstructing official business.

{¶ 28} We also find that Officer Wilcox's search of appellant was lawful. To be a valid search incident to a lawful arrest, the search must be limited to the offender's person and the area within his immediate control. *State v. Gagaris*, 12th Dist. No. CA2007-06-142, 2008-Ohio-5418, ¶ 16, citing *Chimel*, 395 U.S. at 762-763, 89 S.Ct. 2034. In this case, Officer

---

1. R.C. 2921.31(A) provides that "[n]o person without privilege to do so and with purpose to prevent, obstruct, or

Wilcox testified that after he placed appellant in handcuffs, he searched appellant's person. He found a loaded handgun magazine in appellant's front pocket as well as a 9 mm handgun concealed inside a blue sock tucked in the back of appellant's waistband. Therefore, the search of appellant was lawful.

{¶ 29} The trial court did not err in denying appellant's motion to suppress the evidence. The initial stop, arrest, and search of appellant were lawful. Appellant's second assignment of error is overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE OFFENSES OF CARRYING A CONCEALED WEAPON AND HAVING WEAPONS UNDER DISABILITY FOR SENTENCING.

{¶ 32} Appellant argues his convictions for having a weapon while under disability and carrying a concealed weapon are allied offenses of similar import. Therefore, he maintains that the trial court erred when it failed to merge these offenses. The state responds by arguing that the offenses were not allied as they were committed with separate conduct. The state also requests us to apply a plain error standard as appellant failed to object at trial.

{¶ 33} We begin by addressing the standard of review. At trial, appellant conceded that his convictions were not allied offenses. In its brief, the state points to a recent Ohio Supreme Court case which addressed the appellate standard of review regarding a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699. In *Williams*, the Supreme Court held that "[a]n appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *Id.* at ¶ 28. The state urges us to limit the de novo review prescribed in *Williams* to apply only in

delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

cases where a defendant objects to the imposition of multiple sentences for allied offenses at trial.

{¶ 34} We agree with the state that an appellate court conducts a de novo review of a trial court's allied offenses determination only where a defendant raises this issue at trial. In *Williams*, the state was appealing a court of appeals decision that found that two of the defendant's convictions were allied offenses. *Williams* at ¶ 9-10. Importantly, the defendant had raised this issue of allied offenses in the trial court. *Id.* at ¶ 7. Therefore, the only issue before the Supreme Court in *Williams* was the standard of review regarding allied offenses when that issue had been initially raised in the trial court and properly preserved for appellate review.

{¶ 35} Therefore, this court will review appellant's allied offense argument for plain error. *See State v. Luong*, 12th Dist. No. CA2011-06-101, 2012-Ohio-4519, ¶ 47. Plain error exists where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. Crim.R. 52(B); *State v. Blanda*, 12th Dist. No. CA2010-03-050, 2011-Ohio-411, ¶ 20, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The imposition of multiple sentences for allied offenses of similar import amounts to plain error. *Loung* at ¶ 48, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31-33.

{¶ 36} Next, we address whether appellant's convictions for carrying a concealed weapon and having a weapon while under disability are allied offenses. R.C. 2941.25, Ohio's multiple-count statute, prohibits the imposition of multiple punishments for the same criminal conduct. *State v. Brown*, 12th Dist. No. CA2009-05-142, 2010-Ohio-324, ¶ 7. The statute provides the following:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)    Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 37} The Ohio Supreme Court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. *Id.* at ¶ 48. It is not necessary that the commission of one offense will *always* result in the commission of the other. *Id.* Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. *Id.*, quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119 (1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{¶ 38} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

{¶ 39} "Animus" is defined for purposes of R.C. 2941.25(B) as "'purpose' or 'more properly, immediate motive.'" *State v. Lung*, 12th Dist. No. CA2012-03-004, 2012-Ohio-5352, ¶ 12, quoting *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses. *Lung* at ¶ 12. Animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. *State v. Caudill*, 11 Ohio App.3d 252, 256 (12th Dist.1983).

{¶ 40} The state concedes, and we agree, that it is possible to commit the offenses of carrying a concealed weapon and having a weapon while under disability with the same conduct. R.C. 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordinance." R.C. 2921.13(A)(3) provides that "* * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession * * * [or] trafficking in any drug of abuse * * *." Accordingly, it is certainly possible to commit both carrying a concealed weapon and having a weapon while under disability with the same conduct.

{¶ 41} We must now determine whether appellant committed the offenses with the same conduct, i.e., a single act and a single state of mind. In a pre-*Johnson* decision, the Supreme Court found that carrying a concealed weapon and having weapons while under disability have different animi. *State v. Rice*, 69 Ohio St.2d 422, 427 (1982). We note that while *Johnson* altered the analysis as to the first prong of the allied offenses test, the second prong has consistently remained the same. *Lung* at ¶ 15. *See State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747, ¶ 46. Therefore, this analysis is instructive.

{¶ 42} The Court reasoned:

> The intent, or animus, necessary to commit the crime of carrying a concealed weapon, is to carry or conceal, on the person, or ready at hand, a deadly weapon or dangerous ordnance. The gist of the offense is concealment. The gravamen of the offense of having a weapon while under disability is to 'knowingly * * * acquire have, carry, or use' a weapon while under a legal disability." *Id.* It maybe be concluded that there is a difference in the mental state required for both crimes. *Id.*

(Citations omitted.) *Rice* at 427.

{¶ 43} Accordingly, we find that the carrying a concealed weapon and having a

weapon while under disability offenses were committed with separate animi. *See State v. Baker*, 12th Dist. No. CA96-12-123, 1997 WL 473620 (Aug. 18, 1997); *State v. Dillingham*, 12th Dist. No. CA2011-03-043, 2011-Ohio-6348, ¶ 28. Therefore, the trial court did not commit plain error in failing to merge appellant's carrying a concealed weapon and having a weapon while under disability convictions as they were not allied offenses of similar import.

{¶ 44} Appellant's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} IT WAS ERROR FOR THE TRIAL COURT TO NEGLECT TO ADVISE THE DEFENDANT/APPELLANT THAT WHEN COURT COSTS WERE IMPOSED THAT THE FAILURE TO PAY SUCH COSTS COULD RESULT IN THE IMPOSITION OF COMMUNITY SERVICE TO PAY THE SAME AT THE RATE NOT TO EXCEED 40 HOURS PER MONTH.

{¶ 47} Appellant argues the trial court erred when it imposed courts costs without notifying him that if he should fail to pay court costs, he could be ordered to perform community service.

{¶ 48} Appellant was sentenced in June 2012. At the time of his sentencing, R.C. 2947.23(A)(1) specified that in all criminal cases, a court shall include in the sentence court costs and render a judgment against the defendant for such costs. When including these costs in a defendant's sentence, the court must notify the defendant that if he fails to pay court costs, the court may order him to perform community service in lieu of payment. *Id.* at (A)(1)(a). The community service notification in this version of R.C. 2947.239(A)(1)(a) is mandatory and must be provided by the trial court at sentencing. *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, ¶ 10.

{¶ 49} If a trial court fails to notify the defendant of the possibility of court-ordered community service if he fails to pay court costs, the proper remedy is to vacate the imposition of costs and remand the case for proper community-service notification. *State v. Weathers*,

12th Dist. No. CA2012-02-036, 2013-Ohio-1104, ¶ 25.[2] While the defendant in *Weathers* was sentenced before the modification of R.C. 2947.23 that applies to appellant, the modification does not change any portion of the statute that affects our analysis.

{¶ 50} In the present case, the trial court imposed court costs during the sentencing hearing but did not advise appellant that should he fail to pay the costs, he could be ordered to perform community service. Therefore, the court erred when it failed to notify appellant as required under R.C. 2947.23. Consequently, we reverse that portion of the trial court's judgment imposing court costs, affirm the remainder of the trial court's judgment and remand the matter to the trial court for the proper imposition of court costs in accordance with R.C. 2947.23(A)(1).

{¶ 51} Appellant's fourth assignment of error is sustained.

{¶ 52} Judgment affirmed in part, reversed in part, and remanded.

RINGLAND, P.J. and M. POWELL, J., concur.

---

2. {¶a} Recently, R.C. 2947.23 has undergone many revisions. Our decision today and our decision in *Weathers* are limited to the versions of R.C. 2947.23 that were in place during the defendants' sentencing.

{¶b} Additionally, we observe that while our decision in *Weathers* was interpreting a former version of R.C. 2947.23, we incorrectly used the most recent statute's subsection numbering system. *Id.* at ¶ 19. However, this does not affect the determination in *Weathers* that, under the version of R.C. 2947.23 that was effective during the defendant's sentencing, when a trial court fails to give a defendant the proper community service notification when imposing court costs, the remedy is to vacate the imposition of costs and remand the case for proper community-service notification.