[Cite as *State v. Stout*, 2021-Ohio-1125.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-08-085 |
| | : | O P I N I O N |
| - vs - | | 4/5/2021 |
| | : | |
| JOSEPH DONALD STOUT, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-12-1951


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant


**HENDRICKSON, J.**

{¶ 1} Appellant, Joseph Donald Stout, appeals from a decision of the Butler County Court of Common Pleas denying his motion to suppress. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} At approximately 9:00 p.m. on November 30, 2019, Officer Joseph Kettman of the Hamilton Police Department was driving westbound on Franklin Street in a marked

police cruiser when he observed appellant riding a bicycle east on the sidewalk on Franklin Street towards McKinley Avenue in Hamilton, Butler County, Ohio. Appellant was doing "wheelies" and did not have a mounted light on his bicycle, despite it being dark and rainy.

{¶ 3} Officer Kettman determined appellant was in violation of a city ordinance requiring bicycles to have a mounted light when riding on the street between sunset and sunrise. The officer decided to stop appellant for this violation. However, because the officer was driving in the opposite direction of appellant, he had to drive ahead and turn his vehicle around. When the officer caught up to appellant, appellant was still riding his bicycle on the sidewalk on Franklin Street, but he was now between Millville Avenue and Edgewood Avenue – a location that was two intersections away from where Officer Kettman first observed appellant. The officer had not observed appellant operating his bicycle on the street but stated that only "seconds * * * [n]ot more than a minute" passed between the officer's first observation of appellant on the bicycle and his stop of appellant more than two intersections away.

{¶ 4} After stopping appellant, Officer Kettman approached and advised appellant that he was required to have a mounted light on his bicycle. The officer asked appellant if he had anything illegal on him, to which appellant replied, "a knife." Officer Kettman conducted a pat down and recovered the knife. The officer then obtained appellant's identification and discovered that appellant had an active bench warrant for his arrest from the Hamilton Municipal Court. Another officer who had arrived on scene placed appellant under arrest. At this time, appellant volunteered that he had drugs in his pocket. The arresting officer recovered methamphetamine from appellant's left pants pocket.

{¶ 5} Appellant was indicted on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the third degree. Appellant pled not guilty to the charge and filed a motion to suppress, arguing Officer Kettman lacked reasonable suspicion

- 2 -

to stop him for a traffic violation. Appellant contended any evidence discovered after his unlawful seizure, such as the methamphetamine discovered in his pants pocket, had to be suppressed as fruit of the poisonous tree. The state filed a memorandum in opposition to appellant's motion, arguing Officer Kettman had probable cause to stop appellant as he violated Sections 373.01 and 373.06 of the Hamilton City Code by operating his bicycle on the city's streets at night without a mounted light. The state further argued that even if there was not probable cause for the traffic stop, suppression was not proper pursuant to the attenuation doctrine, as the discovery of the arrest warrant served as an intervening circumstance between the initial stop and the discovery of the contraband.

{¶ 6} A hearing on appellant's motion to suppress was held on July 9, 2020. The state presented testimony from Officer Kettman. At the conclusion of the hearing, the trial court denied appellant's motion to suppress, finding that the stop was "a valid investigatory stop." The court dismissed appellant's claim that Officer Kettman did not have a valid reason for initiating the stop as the officer had not personally observed appellant operating the bicycle on the street but rather only on the sidewalk. In dismissing this argument, the court stated, in relevant part:

> THE COURT: Ofc. Kettman was questioned by [the prosecutor] as far as any other cross streets that the Defendant would have had to go over to get where he ultimately caught up to him near the intersection of Franklin and Millville. He identified at least McKinley, I think Edgewood, being at least two streets that [the defendant] had to cross over. So obviously, this is not a continuous sidewalk that the Defendant had to be riding on.
>
> I appreciate Ofc. Kettman's honesty that the only time he ever observed [the defendant] he was on the sidewalk, but obviously at some point in time, to go over those cross streets, he had to be riding on the street at some point in time without a headlight on the bicycle. If this had been a situation where the officer had merely observed him riding back and forth on the sidewalk, never losing sight of him. And only having been on the sidewalk, it might be a different story. But obviously, I think at some point in time to get to where he ultimately caught up to him, [the

defendant] had to ride on the street for a period of time when he crossed over the intersection at McKinley and at Edgewood.

The court further concluded that even if there had not been a lawful traffic stop, the attenuation doctrine applied making suppression inapplicable as "the evidence was seized incident to a lawful arrest."

{¶ 7} Following the denial of his motion to suppress, appellant entered a no contest plea to the charge of aggravated possession of drugs. Appellant was sentenced to a 12-month prison term and given 115 days of jail-time credit.

{¶ 8} Appellant timely appealed from his conviction, raising the following as his sole assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 10} Appellant contends the trial court erred in denying his motion to suppress as the state failed to demonstrate that the traffic stop of his bicycle was a valid investigatory stop. Specifically, he contends that while Officer Kettman "might have had a hunch that [he] drove his bicycle across a street without the bicycle having a headlight," the officer did not have "reasonable articulable suspicion that this was the case" as it was possible that appellant walked the bicycle across the street. Appellant contends suppression is the appropriate remedy for his unlawful seizure and argues that the attenuation doctrine does not apply under the circumstances presented in this case.

{¶ 11} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, Slip Opinion No. 2020-Ohio-6773, ¶ 14, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and to evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-

- 4 -

Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Turner* at ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 12} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. "A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement." *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 18, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996).

{¶ 13} "Where a law enforcement officer has probable cause or an articulable, reasonable suspicion to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid." *State v. Hentenaar*, 12th Dist. Butler No. CA2019-09-161, 2020-Ohio-4503, ¶ 9, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996) and *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23. "Probable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, 'viewed from the standpoint of an objectively reasonable police officer.'" *Godwin*, 2006-Ohio-3563 at ¶ 14, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996). Determination of probable cause that a traffic offense has been committed, "'like all probable cause determinations is fact dependent and will turn on what the officer knew *at the time he made the stop*.'" (Emphasis sic.) *Erickson* at 10, quoting *United States v.*

*Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 13. The stop of a person riding a bicycle in violation of a traffic code is governed by these same standards. *See Willis*, 2013-Ohio-2391 at ¶ 18-22.

{¶ 14} Section 373.01(a) of the Hamilton City Code provides that those provisions of the city's traffic code "that are applicable to bicycles and electric bicycles apply whenever a bicycle or electric bicycle is operated upon any street or upon any path set aside for the exclusive use of bicycles." Section 337.02(a)(1) of the city's code requires that "[e]very vehicle, other than a motorized bicycle, operated upon a street or a highway shall display lighted lights and illuminating devices as required by this chapter during * * * [t]he time from sunset to sunrise." Section 373.06(a), in turn, provides that

> Every bicycle or electric bicycle when in use at the times specified in Section 337.02 shall be equipped with the following:
>
> (1) A lamp mounted on the front of either the bicycle or electric bicycle or the operator that shall emit a white light visible from a distance of at least five hundred feet to the front; and three hundred feet to the sides. A generator-powered lamp that emits light only when the bicycle or electric bicycle is moving may be used to meet this requirement.
>
> (2) A red reflector on the rear that shall be visible from all distances from one hundred feet to six hundred feet to the rear when directly in front of lawful lower beams of head lamps on a motor vehicle.
>
> (3) A lamp emitting either flashing or steady red light visible from a distance of five hundred feet to the rear shall be used in addition to the red reflector; If the lamp performs as a reflector in that it is visible as specified in subsection (a)(2) of this section, the red lamp may serve as the reflector and a separate reflector is not required.

{¶ 15} At the suppression hearing, Officer Kettman's testimony established probable cause for the traffic stop of appellant's bicycle on the basis that appellant was operating his bicycle on the city's streets without a mounted light in violation of Hamilton City Code

Sections 337.02 and 373.06. The officer testified that around 9.00 p.m., after it had turned dark outside, he observed appellant riding his bicycle eastbound on a sidewalk on Franklin Street towards Millville Avenue. When the officer initiated the traffic stop after turning his police cruiser around, an activity that only took "seconds" or less than a minute, appellant was riding his bicycle on the sidewalk between Millville Avenue and Edgewood Avenue – a location that was two intersections away from where Officer Kettman first observed appellant. Considering the distance appellant traveled in the short amount of time it took Officer Kettman to initiate the stop, it was objectively reasonable for the officer to believe appellant had violated the city's bicycle-light ordinances by riding his bicycle onto the street in order to cross the two intersections.

{¶ 16} As for appellant's argument that Officer Kettman had no way of knowing whether appellant rode his bicycle on the street or got off the bicycle to walk it across the intersections since the officer did not continuously observe appellant's travel, we note that an officer does not need proof beyond a reasonable doubt of a defendant's actual guilt of the violation to justify the traffic stop. As this court has previously recognized, "[t]he probable cause standard does not require an actual showing of a [traffic] violation, just a probability of the violation." *Hentenaar*, 2020-Ohio-4503 at ¶ 12. *See also Wilmington v. Lubbers*, 12th Dist. Clinton No. CA2013-06-013, 2014-Ohio-3083, ¶ 12 (noting the establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity). Officer Kettman's observations provided probable cause to initiate the stop of appellant's bicycle for a traffic violation and the stop did not violate appellant's constitutional rights under the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution. The drugs recovered on appellant's person following this lawful traffic stop were not subject to suppression, as

the discovery occurred following appellant's arrest on an outstanding arrest warrant and appellant's admission to having drugs in his pants pocket.

{¶ 17} Furthermore, even if appellant's initial detention had violated his constitutional right to be free from an unreasonable seizure, exclusion of the drugs found in his pants pocket would be inappropriate under the attenuation doctrine. The attenuation doctrine provides that evidence discovered as a result of unconstitutional police conduct is admissible "when the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Utah v. Strieff*, __ U.S. __, 136 S.Ct. 2056, 2061 (2016), quoting *Hudson v. Michigan*, 547 U.S. 586, 593, 126 S.Ct. 2159 (2006).

{¶ 18} In *Strieff*, an officer conducting surveillance of a suspected drug residence stopped the defendant after observing him leave the residence. *Id.* at 2057. The officer detained the defendant in a nearby parking lot and asked for his identification, which the defendant provided. *Id.* The officer was notified by his dispatch that the defendant had an outstanding arrest warrant for a traffic violation. *Id.* The officer arrested the defendant, searched him, and found methamphetamine and drug paraphernalia. *Id.* The defendant moved to suppress the evidence arguing it was derived from an unlawful investigatory stop. *Id.* at 2058. The Utah Supreme Court ultimately ordered the evidence suppressed. *Id.*

{¶ 19} On appeal, the United States Supreme Court examined whether the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence on the defendant's person. *Id.* at 2061. The Court identified and applied the following three factors as necessary considerations when applying the attenuation doctrine: (1) the "temporal proximity" between the unconstitutional conduct and the discovery of the evidence, (2) the "presence of

intervening circumstances," and (3) the "purpose and flagrancy of the official misconduct." *Id.* at 2061-2602, citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254 (1975).

{¶ 20} The Court first noted that the temporal proximity between the unlawful stop and the search favored suppressing the evidence as the officer discovered drug contraband on the defendant only minutes after the illegal stop. *Id.* at 2062. However, the second factor – the presence of intervening circumstances – strongly favored the state as the outstanding warrant for the defendant's arrest predated the officer's investigation and was "a critical intervening circumstance that [was] wholly independent of the illegal stop." *Id.* at 2062-2063. Once the officer discovered the warrant, he had an obligation to arrest the defendant. *Id.* at 2062. And once the officer arrested the defendant, "it was undisputedly lawful to search [the defendant] as an incident of his arrest." *Id.* at 2063. As for the third factor – the "purpose and flagrancy of the official misconduct" – the court found that this factor also strongly favored the state as the officer's "errors in judgment hardly [rose] to a purposeful or flagrant violation of [the defendant's] Fourth Amendment rights." *Id.* The court noted that "there [was] no indication that this unlawful stop was part of any systemic or recurrent police misconduct" but rather was "an isolated instance of negligence that occurred in connection with a bona fide investigation of a suspected drug house." *Id.* Considering all three factors, the court held that "the evidence discovered on [the defendant's] person was admissible because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant." *Id.*

{¶ 21} Applying the factors set forth in *Strieff* to the facts in the present case, we find that the methamphetamine discovered in appellant's pants pocket is admissible under the attenuation doctrine. Assuming the initial stop was unlawful, the only factor favoring appellant is the temporal proximity between the unlawful stop and the search that resulted in the discovery of the drugs. This factor, however, is outweighed by consideration of the

second and third factors, which strongly favor admissibility of the evidence. Like in *Strieff*, the presence of intervening circumstances, specifically the discovery of a preexisting warrant for appellant's arrest, was a critical intervening circumstance wholly independent from the illegal stop. Once the arrest warrant was discovered, Officer Kettman had an obligation to arrest appellant and, once appellant was arrested, the officer was lawfully permitted to conduct a search incident to the arrest. Finally, there was no indication that Officer Kettman's stop of appellant was anything more than an error in judgment based on a reasonable belief that appellant was in violation of the city's bicycle-light ordinance. This isolated instance of negligence does not rise to the level of a purposeful or flagrant violation of appellant's Fourth Amendment rights. Therefore, the methamphetamine found on appellant's person is admissible pursuant to the attenuation doctrine as the unlawful stop was sufficiently attenuated by the preexisting arrest warrant.

{¶ 22} Accordingly, for the reasons stated above, we find no error in the trial court's denial of appellant's motion to suppress. Appellant's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.