[Cite as *State v. Lask*, 2021-Ohio-1888.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 20CA1117 |
| vs. | : | |
| RICHARD LASK, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Steven R. Adams, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Anthony Hurst, Assistant Adams
County Prosecuting Attorney, West Union, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 5-26-21
ABELE, J.

{¶ 1} This is an appeal from an Adams County Common Pleas Court judgment of

conviction and sentence. Appellant assigns the following error for review:

> "THE SEARCH WARRANT IS INVALID WHERE THE
> DECISION TO SEEK A SEARCH WARRANT WAS
> PROMPTED BY INFORMATION GAINED FROM AN
> UNLAWFUL SEARCH."

{¶ 2} On October 9, 2017, a Kansas Highway Patrol trooper stopped appellant's vehicle

on Interstate 70 for allegedly following another vehicle too closely. During the ensuing

encounter, the trooper searched appellant's vehicle and discovered empty duffle bags that

contained "marijuana shake" and "dryer sheets." The trooper also observed two large "fairly

empty coolers" in the vehicle's back seat. The trooper let appellant leave the scene, but later

wrote an email to summarize his encounter and his suspicion about appellant's involvement in drug trafficking. The trooper then sent the email to the Adams County, Ohio Sheriff's Office.

{¶ 3} Adams County Sheriff's Detective Sam Purdin received the Kansas email and decided to investigate. On October 16, 2017, one week after the Kansas traffic stop, Detective Purdin drove to appellant's residence and observed a pickup truck leave the premises. After Purdin observed the vehicle run a stop sign and drive left of the centerline, he stopped the vehicle.

{¶ 4} As Detective Purdin approached appellant, the vehicle's driver, the detective "instantly smelled" a "very strong" odor of burnt marijuana emanating from the vehicle. Appellant later admitted that he had smoked marijuana. Shortly thereafter, another officer arrived at the scene and performed field sobriety tests. After officers arrested appellant for operating a vehicle while under the influence, a vehicle search resulted in the discovery of approximately two pounds of marijuana.

{¶ 5} After this encounter, Detective Purdin applied for a warrant to search appellant's residence. The search-warrant affidavit states:

> On October 9, 2017, the Affiant received information from the Kansas Highway Patrol indicating a Trooper stopped a vehicle driven by Richard Lask. The Trooper discovered two (2) large duffel bags containing marijuana "shake" and dryer sheets. The Trooper stated Richard Lask indicated the marijuana discovered was his own personal use.
> The Affiant further states on October 16, 2017, he went to the residence of Richard Lask to follow up on this information. While in the area, the Affiant observed Richard Lask leaving his residence in a red Dodge Dakota truck. The Affiant observed the vehicle failed to stop at a stop sign located at the intersection of State Route 41 and Stanfield Road. The Affiant further observed the vehicle's brake lights were broken. Based on these observations, the Affiant conducted a traffic stop on the vehicle. The Affiant requested additional law enforcement units proceed to the scene to assist.
> As the Affiant approached the vehicle, he could detect a strong odor of marijuana emanating from the vehicle. The Affiant states he has been a Law

Enforcement Officer for approximately 17 years and through his training and experience can positively identify the odor of marijuana. While speaking with Richard Lask, the Affiant observed his speech was slurred and his eyes were "bloodshot". Richard Lask admitted to the Affiant he had previously smoked marijuana. Deputy Walters arrived at the scene and conducted field sobriety tests on Richard Lask. Mr. Lask was determined to be driving a vehicle under the influence of drugs and/or alcohol and was placed under arrest. The Affiant further states an inventory search of Richard Lask's vehicle revealed approximately two (2) pounds of marijuana. Mr. Lask stated this marijuana was for his own personal use.

The Affiant further states he believes there is being concealed at the resident of Richard Lask * * * an undetermined amount of marijuana and items used in the cultivation of marijuana. These beliefs are based on the Affiant observing Richard Lask leaving his residence just prior to being discovered with marijuana in his possession. Based on the amount of marijuana discovered inside Richard Lask's vehicle, the Affiant believes this is not for personal use and further criminal activity is being conducted inside Richard Lask's residence.

{¶ 6} A judge granted Detective Purdin's request for a warrant to search appellant's residence and, during the search, officers discovered a substantial amount of marijuana and drug paraphernalia.

{¶ 7} On October 27, 2017, an Adams County Grand Jury returned an indictment that charged appellant with possession of marijuana, in an amount of approximately 40,000 grams, a second-degree felony in violation of R.C. 2925.11(A). Appellant entered a not guilty plea and filed a motion to suppress evidence.

{¶ 8} In his motion to suppress evidence, appellant asserted that (1) officers improperly detained appellant for a suspicion of operating a motor vehicle while under the influence, and (2) because officers based the search of his home upon information obtained during the Kansas unconstitutional search and seizure, the evidence discovered during the search is the fruit of the unlawful Kansas traffic stop. Consequently, appellant requested the trial court suppress the

evidence discovered during the search of his residence. The trial court, however, overruled appellant's motion to suppress evidence.

{¶ 9} Subsequently, appellant entered a no-contest plea to the possession of marijuana charge, in violation of R.C. 2925.11(A) a second-degree felony. The trial court sentenced appellant to serve a mandatory minimum five-year prison term. Appellant appealed his judgment of conviction and sentence. Appellant argued that the trial court incorrectly determined that the Kansas state trooper had either probable cause or a reasonable suspicion to stop appellant's vehicle for a traffic violation.

{¶ 10} After review, this Court noted that (1) the Kansas trooper failed to articulate any specific facts that gave rise to a reasonable suspicion that appellant committed a traffic violation, (2) the video evidence did not show an alleged traffic violation, and (3) the trooper could not recall any details regarding the alleged traffic violation. Thus, this Court determined that any evidence obtained from the Kansas traffic stop should be inadmissible. We further concluded, however, that evidence obtained from the Ohio traffic stop is admissible. Thus, we rejected appellant's argument that the Ohio traffic stop was derived solely from information learned from the unconstitutional Kansas traffic stop. Appellant, however, asserted that information learned during the unconstitutional Kansas traffic stop motivated Detective Purdin to drive to appellant's house to investigate. We observed that, even if Purdin decided to investigate appellant due to the Kansas email, Purdin did not stop appellant's vehicle on the basis of any information contained in the Kansas trooper's email. Instead, Purdin stopped appellant's vehicle after the detective observed appellant run a stop sign and drive left-of-center. We therefore agreed with the trial court's conclusion that Purdin had probable cause, independent of the unlawful Kansas traffic stop, to stop appellant's vehicle. We further noted that appellant did not challenge the trial

court's finding that Purdin had probable cause to search the vehicle. We then considered the issue of whether the evidence discovered during the search of appellant's home should be suppressed because the search-warrant affidavit contained some information obtained from the Kansas traffic stop. We recognized that the trial court did not consider whether the search-warrant affidavit contained sufficient probable cause that evidence of a crime would be discovered at appellant's residence absent the information obtained during the Kansas traffic stop. We thus remanded the matter so the trial court could consider whether Detective Purdin's search-warrant affidavit set forth sufficient information to constitute probable cause to search without considering information obtained during the Kansas traffic stop.

{¶ 11} On June 10, 2020, the trial court held a hearing to consider the issue. The state asserted that the trial court should be limited to considering whether the remainder of the warrant, absent the Kansas information, established probable cause. Appellant, however, argued that the court must consider whether the Kansas information also tainted Detective Purdin's decision to obtain the warrant. Appellant claimed the exclusionary rule requires courts to suppress evidence discovered during a search unless the state can establish that illegally obtained information (here from the Kansas traffic stop) did not prompt Purdin to seek a search warrant. Appellant thus claimed that the state must show that officers had an independent source for information to obtain a search warrant.

{¶ 12} After consideration, the trial court did not agree that it must suppress the evidence discovered during the search of appellant's residence. Instead, the court determined that, after it redacted information obtained from the Kansas stop, the search-warrant affidavit nevertheless contained sufficient information to establish probable cause to believe that a search of appellant's residence would uncover evidence of a crime. The court points to the following facts

to support a finding of probable cause: (1) Detective Purdin observed appellant leave appellant's residence in a  pickup truck; (2) the detective stopped appellant after he observed two traffic violations; (3) the detective detected an odor of marijuana emanating from appellant's vehicle; (4) appellant admitted that he had smoked marijuana; (5) the officers arrested appellant for driving while under the influence; (6) a search of appellant's vehicle resulted in the discovery of two pounds of marijuana; and (7) Detective Purdin did not believe appellant's claim that two pounds of marijuana were for his personal use.  The trial court thus denied appellant's motion to suppress evidence and reaffirmed his sentence.  This appeal followed.

{¶ 13} In his sole assignment of error, appellant asserts that the trial court erred by denying his motion to suppress the evidence discovered during the search of his residence. Appellant argues that Detective Purdin sought a search warrant based upon information learned during the unlawful Kansas traffic stop, and that a search warrant should be invalid when law enforcement decides to seek a search warrant based upon illegally obtained information. Appellant thus claims that the exclusionary rule requires the trial court to suppress the evidence discovered during the search of his residence.

{¶ 14} The state, however, disagrees with appellant's analysis and argues that the exclusionary rule does not require suppression of the evidence discovered at appellant's residence.  Instead, the state contends that the untainted evidence that Detective Purdin collected sufficiently establishes probable cause to believe that officers would discover evidence of criminal activity at appellant's residence.  The state further contends that the connection between the Kansas traffic stop and the search of appellant's residence is too attenuated to require exclusion of the evidence.

I

{¶ 15} Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.g., State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41 (4th Dist.), ¶ 7. Appellate courts thus "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'" *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *Burnside* at ¶ 8. Accepting those facts as true, reviewing courts "'independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Id.*, *Burnside* at ¶ 8.

II

{¶ 16} The Fourth Amendment to the United States Constitution provides that search warrants may be issued only upon probable cause:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 17} Courts that must determine whether a search warrant was issued upon a proper showing of probable cause must examine the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Id.* at 238–239, 103 S.Ct. 2317, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on other grounds, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). And, the issuing magistrate's duty is to

determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317.

{¶ 18} "The essential protection of the warrant requirement of the Fourth Amendment * * * is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Gates*, 462 U.S. at 240, 103 S.Ct. 2317, quoting *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Accordingly, a search-warrant "affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Moreover, the facts and circumstances set forth in the "affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317. A search-warrant affidavit need not, however, comply with any "'[t]echnical requirements of elaborate specificity.'" *Id.* at 235, 103 S.Ct. 2317, 2332, quoting *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741. Instead,

> [i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*George* at paragraph one of the syllabus, quoting *Gates*, 462 U.S. at 238-239, 103 S.Ct. 2317; *accord Castagnola* at ¶ 35 ("[T]he evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place.").

{¶ 19} A search warrant issued after a magistrate or judge has independently determined that probable cause to search exists will enjoy a presumption of validity. *State v. Parks*, 4th Dist. Ross No. 1306, 1987 WL 16567 (Sept. 3, 1987), *4; *see Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (noting that search-warrant affidavit presumed valid). Thus, "'the burden is on a defendant who seeks to suppress evidence obtained under a regularly issued warrant to show the want of probable cause.'" *United States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir.1977), quoting *Batten v. United States*, 188 F.2d 75, 77 (5 Cir. 1951); *accord Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988), citing *de la Fuente* (stating that "[t]he burden of initially establishing whether a search or seizure was authorized by a warrant is on the party challenging the legality of the search or seizure"); *State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498, ¶ 27 (7th Dist.) (explaining that a defendant who "attacks the validity of a search conducted under a warrant" carries "the burden of proof * * * to establish that evidence obtained pursuant to the warrant should be suppressed"); *State v. Clouser*, 4th Dist. Highland No. 16CA4, 2016-Ohio-5370, ¶ 13.

{¶ 20} In the case sub judice, appellant asserts that the search warrant is tainted due to the information learned during the unlawful Kansas traffic stop that prompted Detective Purdin's decision to investigate and to seek a search warrant. Appellant thus contends that the exclusionary rule requires the suppression of the evidence obtained pursuant to the warrant.

{¶ 21} "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search." *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988), citing *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The rule applies both to "the 'primary evidence obtained as a direct result of an illegal search and seizure' and * * * 'evidence later discovered and found to be derivative of

an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016), quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *accord Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939) (stating that the exclusionary rule prohibits evidence that is derivative "of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint"*).*

{¶ 22} The purpose of requiring suppression of unlawfully obtained evidence is to deter Fourth Amendment violations. *Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016). Given "the significant costs of th[e exclusionary] rule," however, the United States Supreme Court has "deem[ed] it 'applicable only * * * where its deterrence benefits outweigh its substantial social costs.'" *Id.*, quoting *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (internal quotation marks omitted). Therefore, "'[s]uppression of evidence * * * has always been [a court's] last resort, not [its] first impulse.'" *Id.*, quoting *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

{¶ 23} The United States Supreme Court's reluctance to suppress evidence under the exclusionary rule has led to "several exceptions," three of which "involve the causal relationship between the unconstitutional act and the discovery of evidence." *Id.*

> First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. *See Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. *See Nix v. Williams*, 467 U.S. 431, 443–444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Third, and at issue here, is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted

by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Hudson, supra*, at 593, 126 S.Ct. 2159.

*Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016).

{¶ 24} We further observe that the United States Supreme Court has refused to hold that "'evidence is "fruit of the poisonous tree" simply because "it would not have come to light but for the illegal actions of the police."'" *Hudson v. Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006), quoting *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), quoting *Wong Sun v. United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). "Rather, but-for cause, or 'causation in the logical sense alone,' *United States v. Ceccolini*, 435 U.S. 268, 274, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), can be too attenuated to justify exclusion, *id.*, at 274–275, 98 S.Ct. 1054." *Hudson v. Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006). Thus, "the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), quoting J. Maguire, Evidence of Guilt 221 (1959). Accordingly, "evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Segura v. United States*, 468 U.S. 796, 804–05, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), quoting *Nardone v. United States, supra*, 308 U.S., at 341, 60 S.Ct., at 268.

{¶ 25} In general, evidence that law enforcement officers obtain from an independent source dissipates any taint. *Segura v. United States*, 468 U.S. 796, 804–05, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), citing *Silverthorne Lumber Co. v. United States*, 251 U.S., at 392,

40 S.Ct., at 183 (emphasis added); *see also State v. Carter*, 69 Ohio St.3d 57, 67, 630 N.E.2d 355 (1994) ("The exclusionary rule does not apply * * * if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint, as where the police have an independent source for discovery of the evidence."). Thus, "'the exclusionary rule has no application [where] the Government learned of the evidence "from an independent source."'" *Segura v. United States*, 468 U.S. 796, 804–05, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), quoting *Wong Sun, supra*, 371 U.S., at 487, 83 S.Ct., at 417, quoting *Silverthorne Lumber Co., supra*, 251 U.S., at 392, 40 S.Ct., at 183).

{¶ 26} In the case sub judice, law enforcement officers learned that appellant possessed 40,000 grams of marijuana in his residence independent of the Kansas trooper's observations that occurred one week before Detective Purdin's encounter with appellant. Adams County officers discovered 40,000 grams of marijuana pursuant to a search warrant that relied upon facts learned independently from the Kansas traffic stop. The facts set forth in the search-warrant affidavit show that after Purdin stopped appellant's vehicle for traffic violations, he detected the odor of burnt marijuana and subsequently discovered two pounds of marijuana in the vehicle. The discovery of the marijuana in appellant's vehicle, combined with appellant's recent departure from his residence, prompted the search of appellant's residence. It is important to note that neither fact relied upon evidence acquired during the Kansas traffic stop.

{¶ 27} Moreover, simply because Detective Purdin decided to investigate appellant after he received information from the Kansas trooper does not suggest or require the conclusion that officers lacked an independent source for the discovery of the marijuana inside appellant's residence. As we observed earlier, the United States Supreme Court has rejected the argument that evidence must be excluded if "it would not have come to light but for the illegal actions of

the police." *Hudson v. Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006), quoting *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), quoting *Wong Sun v. United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Instead, the question is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the case at bar, officers discovered the large amount of marijuana inside appellant's residence by a means sufficiently distinguishable from the Kansas traffic stop, thus, so as to purge the taint of the Kansas stop.

{¶ 28} Consequently, when an affidavit for a search warrant contains information that police improperly obtained, courts will nevertheless uphold the warrant if "after excising tainted information from a supporting affidavit, '[]sufficient untainted evidence was presented in the warrant affidavit to establish probable cause * * *.' " *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 17, quoting *United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). Including illegally obtained information in a search-warrant affidavit does not invalidate the warrant, unless the illegally obtained information "proved to be critical to establishing probable cause for the issuance of the warrant." *United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 3305, 82 L.Ed.2d 530 (1984).

{¶ 29} In the case sub judice, even though the search-warrant affidavit referenced the unlawful Kansas stop, we agree with the trial court's conclusion that the affidavit contains sufficient untainted evidence to establish probable cause to search appellant's residence for evidence of criminal activity. The illegally obtained information was not critical to establishing

probable cause for the issuance of the warrant. After redacting the information gathered during the Kansas traffic stop, the search-warrant affidavit shows that shortly after appellant left his house, Detective Purdin conducted a valid traffic stop and discovered two pounds of marijuana inside appellant's vehicle. Purdin stated that, in his experience, two pounds of marijuana is not intended solely for personal use. Once again, we agree with the trial court's conclusion that the affidavit sufficiently sets forth untainted evidence to establish a probable cause that a search of appellant's residence would uncover evidence of additional marijuana or contraband. Consequently, the trial court correctly overruled appellant's motion to suppress evidence.

{¶ 30} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.